Morning, Your Honors. My name is Daniel Taylor. May it please the Court, I will keep track of my time, but I plan to reserve two minutes for rebuttal. Okay, before we start the clock running, just you are, my understanding, you are a certified law student, is that correct? That is correct, Your Honor. All right, and you're a supervising attorney, John Balazs? Yes. All right, and you're present here in the courtroom. All right. A certified law student from where? Mature School of Law, Your Honor, Sacramento. Oh. I've heard of that school. All right, then, and I'm sorry, you said you wanted to reserve two minutes? Two minutes for rebuttal, yes, Your Honor. All right, so you understand that it's really our time, so you might get two minutes left or you might not, but I'll try to remind you when you get to the two-minute mark. Thank you, Your Honor. All right, you can proceed with your argument. Thank you. Mr. Chapman, the first amendment of the United States v. Chapman is a case of appeal. In this case, it's about an invasion of Mr. Pope's reasonable expectations of privacy. Under the Fourth Amendment and the United States v. Chapman, the Forest Service officer's search of Mr. Pope was unreasonable. As this Court framed the issue in Chapman, the question presented by the appeals whether, at the time a penalty was directed to empty his pockets, there was probable cause to suppose that he was in the possession of narcotics and subject to arrest. Is it your claim that the order or the request, however you want to style it, empty your pockets, to which he does not comply, is a search? Yes, Your Honor, that is our claim. And why do you say that? Because, Your Honor, at that point, no reasonable person would have an expectation of privacy any longer in the contents of your pockets. He had just seen a friend of his placed in a police car, handcuffed and under arrest, because he failed to obey a lawful order by a police officer. What evidence was produced when he refused the command? No evidence was produced, Your Honor. But there was nothing to suppress. No evidence was produced at the time that that search began. However, the search continued throughout as a continuous series of events. Let's stop action there for a moment. After he was asked or told to empty his pockets and he did not comply, then some further conversation occurred between the officer and your client. Yes, Your Honor. As I remember the record, that further conversation was that Mr. Pope, A, had admitted that he had been smoking marijuana, and B, admitted that he had marijuana on him. Now, that changes the water on the beans, doesn't it? It does, Your Honor, but simply because a search begins and no evidence is found does not mean that when that evidence is found at a later point, it is not originated from that same search that began prior to that evidence being discovered. But my problem is that the original search didn't produce anything, if words alone are a search. And by the way, are you relying on some language from Judge Sutton of the Sixth Circuit saying that words searched by themselves constitute a search? No, Your Honor. I'm relying on the – I'm relying on Chapman decided by this Court in 1977. But there was already – Chapman was already under arrest, right, when he went into the room? There is discrepancies in the record regarding whether or not he was under formal arrest. He had been asked to go with the officer. But there certainly was probable cause to arrest at that point, as opposed to here. This is earlier. But let's just talk about what you're asking us to do and kind of – this is the fun part, the hypothetical in law school. Yes, Your Honor. So if an officer – under your theory, if an officer knocks on the door and yells out, police, open the door, has there been a search if no one opens the door? The search has begun, Your Honor. So that's a search, just when they go knock, knock, police, open the door? The search has begun by the police asking them to – ordering them to open the door at that point, yes. So every time an officer – so then the next thing is every time an officer approaches someone and asks them a question, are they being searched? We know the law doesn't say that. I mean, you're going pretty – you're going where no one's gone. It's bold. If the statement by the officer when they approach the person requires them to do something that if the officer did it, was a search, then yes, that is a search. Whether he does it or not. Well, at that – If he says, empty your pockets, and the man says, that's nice, and walks off and gets in his car and drives away, the search has begun. The search began and then ended, Your Honor, yes. However – When did it end? When he got in the car and drove away? It ended upon him leaving, upon him no longer being in the presence of the officer. It ended because they're – just because a search occurs and no other – Do you have a case that says anything like that? No, I do not, Your Honor. Pardon me. What's your best case that the search – I'm thinking of the questions that have been asked, especially by Judge Callahan. What's your best case that if a person says, empty your pockets, that that's a search right then? There's been a violation of the constitutional – Fourth Amendment constitutional right at that point. Chapman, Your Honor, specifically frames the issue as that being the beginning of the search. Read it to me. The exact quote is, the question presented on appeal – presented by the appeal, whether at the time appellant was directed to empty his pockets, there was probable cause to suppose he was in possession of narcotics. And it doesn't say the search began then. It has some other issue. Well, but it implies that the search did begin then, because probable cause to search has to be determined prior to the search. You can't bootstrap it based on things that you find after that. So in determining – So there's been a violation of the Constitution, the Fourth Amendment, at the statement empty your pockets, or at the statement police come in. Suppose nothing happens from that point on. Can they bring a civil suit against the officer for violation of Fourth Amendment rights? Yes, Your Honor, because there was still – just simply because there was no evidence found by that search does not mean that there was a search. So if a person says empty your pockets and he has a heart attack, he can bring a lawsuit for the – even though nothing has ever happened on the basis of violation of the Fourth Amendment. Nineteen eighty-three suits aside, Your Honor, I'm not completely versed in those. If that had been an issue that we had briefed before, I may be able to answer that question. I'm just wondering where we're going with your theory. I haven't – I haven't seen the case that has said that other than the Sixth Amendment case – Sixth Circuit case. I'm just wondering where we're going with your theory. Your Honor, it would merely be that when ordered to do something by a police officer simply because that order was not complied with in the instant that it was made – I point you to the record and we've recited these facts and looked at these facts a number of different ways. But the search itself, the entire interaction between Mr. Pope and the officer that is at issue here took approximately 15 seconds from the time that he first approached him and began speaking with him to the time that the officer was done ordering and the marijuana was on the hood of the car was approximately 15 to 20 seconds. Well, if you – if we accept your theory that that was a search or that that was a just based on that, your answer is correct that someone would be able to bring a 1983 and that's what – that's where you're asking us to go. Every time an officer asks someone something, even if the person doesn't comply, they've got a 1983 suit. They have a – they may have a 1983 suit. However, they – based on my understanding of it, would be very hard-pressed to find any damages unless the situation were to occur. As His Honor stated earlier, there may be some heart attack in the situation. But it's a constitutional violation. Yes, because his expectation of privacy at that point no longer exists. I hate to think how many constitutional violations officers would be committing every day, every time they asked a question. There's a difference, Your Honor, I think a distinction to be made between asking a question and making a demand. Asking a question, you know, the general approach and ask questions of somebody, that's one thing. Whereas, in this case, the officer was demanding that the person do something that had the officer done it himself would have been considered a search. When your mother told you, are you going to clean up your room? Is your mom really asking you? Does she really – do you know what the answer is? Are you going to clean up your room? That's go clean up your room. And when an officer says, are you going to empty your pockets? Your Honor, I think that those cases would have to be taken up in the specifics of those cases and decided on those merits alone. I see that my time is up. I would like to reserve it. Okay. We'll take this one on my time. Absolutely. Let's assume that we take your position, that it started at that time, that is. And the question is whether or not he had probable cause. Now, what did the police officer know at the time he asked him to empty the pockets? He knew the guy had smoked or could reasonably assume he had been smoking pot because he could smell it on him. Did he know that he had pot in his pocket at that time? He did not know that he had marijuana in his pocket at that time, and I do not believe there's anywhere in the record that it states that he knew that he had marijuana on him based on the smell. He asked him two questions simultaneously. One question was, are you under the influence? Have you smoked just a little bit? Mr. Pope replied, yeah, a little bit, responding to that second question. There's no information in the record as to when that happened, how long ago that happened, where that happened, whether anything belonged to Mr. Pope. Well, we don't get that far into proof. The question is, could the police officer reasonably believe that he had marijuana in his pocket based upon his having smoked pot in this general area where there's a people that had come together to party and et cetera? Is that too much of a stretch? There's not probable cause in that situation, and I would make one distinction there where he did not know that the consumption of marijuana occurred in that area. The only thing he knew was that at some point prior to that interaction, Mr. Pope had smoked marijuana. You agree that once he stated that he had marijuana in his pocket, that his protection of privacy was out the window? Absolutely, Your Honor. He no longer had any expectation of privacy in the contents of his pockets, but again, that came after the original demand to empty his pocket. Okay. Thank you. All right. Thank you. Thank you. Good morning. Good morning. May it please the Court, I'm Justin Lee on behalf of the United States. I want to respond initially to the point raised by Mr. Taylor. Chapman does not control this issue because Chapman did not grapple with what constitutes a search. In Chapman, the Court presupposed that there was a search and sought to determine if there was probable cause. There was no definition of what constitutes a search. The Supreme Court in Jacobson defined a search as an infringement of an individual's reasonable expectation of privacy. This is consistent with this Court's en banc ruling in Windsor. In Windsor, law enforcement officers followed a robbery suspect into a nearby hotel. At that hotel, the officers knocked on the door and demanded that the suspect open the door. The suspect opened the door, and the law enforcement officers gained visual entry into the hotel room. The en banc court held that it was gaining visual entry into the suspect's room that violated his Fourth Amendment search and not the knock on the door. For if there is no visual entry into the room, there would have been no infringement upon his reasonable expectation of privacy. Well, it seems, you know, Chapman, I'm struggling with a little more than you are from the standpoint that it seems that it's very close to this case, and there we considered whether the officer had probable cause when he first asked the suspect to empty the pockets, right? Correct, Your Honor. So since, and Chapman is binding on this, so whatever we say in this case, we've got to make sure that we're following what Chapman said. Don't we have to follow it and consider whether the officer had probable cause when he first asked Mr. Polk to empty his pockets? No, Your Honor. This case is factually distinct from Chapman in that there was a change in the intervening facts. Subsequent facts emerged which justified a search based on probable cause. There may not have been probable cause at the first command to empty his pockets, but So you concede that there wasn't probable cause at that point? I don't believe that there was probable cause at the time he initially commanded him to search. Okay. The magistrate judge below determined that there may have been reasonable suspicion, but that did not rise to the level of probable cause. In fact, the only knowledge that he had at that time was that the defendant admitted to smoking marijuana, and when the law enforcement officer asked him if he had any on him, he told him no. So at that point, he would not have had probable cause. All right. And then, but I guess in terms of why shouldn't this, I think, what I'm understanding the appellant arguing, why shouldn't this just be considered one search which started when the officer first demanded Polk to empty his pockets? And, you know, what's your basis for splitting this up into two different events since there was so little time, really, between when you told him to empty his pockets? The analysis under the Fourth Amendment has to begin when there was something that caused an infringement upon an individual's reasonable expectation of privacy. It cannot be determined at the time of the initial command because there was no infringement. Moving back in time, you could look at the probable cause determination all the way back to the time when the law enforcement officer got out of his car, but the important time is when a search occurred, when there was an infringement upon his reasonable expectation of privacy. And it was the intervening change in facts that changed the entire legal landscape when the defendant admitted that he had marijuana in his possession and therefore had provided probable cause to that law enforcement officer. Well, do you, just when we go through the parade of horribles, which I did with appellant's counsel, if, in fact, we were to accept his theory that when he was asked to empty his pockets, even though he didn't, that that was a search, does then that mean that everyone that's asked a question, even if they don't comply when they're ordered to turn something over and there isn't probable cause at that point, does that then, does that person have a 1983 claim? I think you're correct, Your Honor. If this Court is to define a command by a law enforcement officer in and of itself as a search, therefore, everyone that was commanded to do something would have a 1983 suit for a violation of the Fourth Amendment. So you rely on Windsor. At the time the officers knocked on the door, did they make any statement or was there just a knock? There were two law enforcement officers and an FBI agent with their guns out, and they knocked on the door, said who they were, and commanded the door be opened. So there was a command that was made at that point? Yes, Your Honor. And as you read Windsor, that was not a search or it wasn't part of the search? No, Your Honor. And, in fact, the appellant in that case, the suspect, argued that very point, that when the law enforcement officer knocked on the door and demanded that he open the door, that that constituted a search. But the en banc court held that the police effectuated a search when the suspect opened the door and they gained visual entry into the room. So you take it, then, that the demand to empty your pocket is like the knock on the door, and the looking in after the door is open is like when he puts the marijuana on the hood of the car? That's correct, Your Honor. But in the Windsor case, the government lost? That's correct, Your Honor. In that case, the government argued that they did not physically enter into the room, and, therefore, they had not violated his Fourth Amendment rights. So how do you distinguish that part of this case from Windsor? Windsor is only applicable to this case with respect to the first initial command to empty his pockets. It's as if the law enforcement officer had knocked on the door, and the suspect had not opened the door. There would have been no infringement upon his reasonable expectation of privacy, and, therefore, no search. So you would – in Windsor, did somebody open the door from the inside? That's correct, Your Honor. And somebody here opened their pockets from the inside? That's correct, Your Honor. So how do you make this – cutting this distinction of Windsor not applying to this case? There was a subsequent change in facts that justified a search based on probable cause in between the two commands to turn out his pockets. Tell me how there's two – I don't get the two. Isn't the looking through into the room the same as the marijuana coming out and being put on the hood? Your Honor, if Windsor was absolutely the same as this case, it would have been if the law enforcement officer said, So it's the subsequent facts that came about that changed the entire legal landscape. And when those subsequent facts came out, this case became controlled by Chapman in that there was probable cause to search and there was a search. So your view is that because knock on the door, open it up,   and there was a search, and that was not considered by the en banc court as a search, that we couldn't consider the order to empty your pocket a search in this case? That's correct, Your Honor. Mr. Lee, your view is going to put us in direct conflict with the Sixth Circuit. Here's what Judge Sutton says. Several cases confirm that words alone may amount to a search. And that's in the Street case. Have you taken a look at those cases to see whether Judge Sutton was right? I haven't seen that particular case, Your Honor. But I believe that that court is right in that there may be a time when words alone may constitute a search. Without compliance? Well, if there was subsequent compliance. There may be facts that might cause someone, even though the initial command wasn't complied with, but it was a coercion that caused the subsequent. Here, there's nothing in the factual record that says there was anything about the that coerced the defendant into subsequent compliance. However, if there were different facts, if he had used a different tone of voice, if he had pulled out his firearm and pointed it at the defendant, it might change the situation, and there could be a circumstance. Well, but even if he pulled out his firearm and showed it to the defendant and said, empty your pockets, and the defendant said no, there wouldn't be any search, would there? There would not have been a search at that point, but it could be found that that caused a subsequent search. No. There was coercion that led to him turning out his pockets. But if he said, don't shoot me, I've got a bunch of marijuana in my pocket, at that point, the situation changes. That's correct, Your Honor. That's correct. If there are no further questions, I will submit on the briefs. There do not appear to be. Thank you. You may proceed. Thank you. On my rebuttal, Your Honor, I'm making two points. One, that even if Chapman controls, then defense should win. And even if probable cause were to exist, the warrant requirement would still be in place, and, again, the defense should win. And then also, Windsor is far less controlling than Chapman. In Windsor, there was no need to determine when the search began because there was no subsequent changes, as my opposing counsel mentioned there are in this case. Therefore, in Windsor, there was no need to determine whether or not the search began at the words or began upon the visual inspection. But if we, in fact, did do it, are you saying that that's dicta? I'm sorry, Your Honor. I don't quite follow. Did Windsor make the distinction that there was no search at the time of the knock on the door? Windsor made the distinction that the intrusion and the violation of the expectation of privacy in that case was a visual violation of the privacy when the door was opened. However, the requirements set down by the Supreme Court are merely that there's an infringement on the reasonable expectation of privacy. It doesn't classify what kind of infringement. It doesn't say there must be a visual infringement or a physical infringement. It just says merely there's an infringement. And on that order that Mr. Pope received in this case, there was an infringement because he could no longer reasonably expect to have the contents of his pocket stay private because he had just received an order from this officer who had just recently placed his friend in handcuffs and in the back of a police car for failure to obey a lawful order from this police officer. Going back to my first point, if Chapman does control and the search began at the time of the demand, then the subsequent discovery in that search was the fact that he had marijuana on him and it can't be used to then justify the search. And even if the search, even if at the point when he admitted the marijuana I see my time is up. You can finish your sentence. Thank you, Your Honor. Even if at the point he admitted that marijuana was in his possession and probable cause began to exist at that point, a warrant was still required. Thank you for your argument. I'd like to thank, you know, without commenting on the merits of the case, I'd like to compliment both of you for your argument in this case. It's a, you know, it's got interesting and, you know, and I'm particularly, we've had the pleasure the last two days of having a certified law student argue in two different cases. And in both of the cases I have to say that it's some of the best argument that we heard in the day from both the government and the certified law students. So that's something to be very proud of. And we hear argument all the time. And I just want to say that both of these arguments are among the highest quality. Thank you. Thank you very much, Your Honor. Thank you, Your Honor. I understand that the majority of students in the Federal Defender Program are very active. Mr. Taylor was in a jury trial Monday through Wednesday. And I'd like you today to support him for this. Since there's many lawyers that go their whole career without ever having a jury trial, we certainly, I think that we've all realized that both in the U.S. Attorney's Office or the District Attorney's Office or the Defender's Office, this is where people are getting trial experience these days. And I think it's really important. And we appreciate the service that you're providing. Thank you.
judges: Wallace, Callahan, Bea